NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0580n.06

Case No. 16-1081

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 25, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| In re: RALPH F. HOLLEY; MELONEE L. MONSON-HOLLEY,     Debtors. | ) ) ) ) ) |
| RALPH F. HOLLEY; MELONEE L. MONSON-HOLLEY,     Appellants, v. COLLENE K. CORCORAN, Trustee,     Appellee. | ) ) ) ) ) ) ) ) ) ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: DAUGHTREY, GIBBONS, and COOK, Circuit Judges.

COOK, Circuit Judge. Chapter 7 debtors Ralph Holley (Holley) and Melonee Monson-Holley (Monson-Holley) (collectively, the Debtors) owned real property in Michigan—located at 7545 Heather Mead Lane, West Bloomfield, Michigan (the Property)—as tenants by the entirety. They claimed the Property as exempt on their bankruptcy schedules. After the bankruptcy court authorized the Property's sale, the Chapter 7 trustee, Collene Corcoran (the Trustee), petitioned to charge her administrative expenses against a portion of the sale proceeds. The Debtors objected, contending that the sale proceeds were exempt, and they also moved for

reconsideration of the original orders authorizing the sale. The bankruptcy court denied the Debtors' objections to the payment of the Trustee's fees from the sale proceeds and denied the Debtors' Motion for Reconsideration. We VACATE and REMAND the bankruptcy court's orders awarding payment of the Trustee's fees from the sale proceeds, but we AFFIRM its order with respect to the Debtors' Motion for Reconsideration.

## I.

In September 2012, Holley filed a voluntary petition for Chapter 7 bankruptcy in the Eastern District of Michigan, represented by his wife, Monson-Holley, an attorney. On Holley's original schedules, filed in October 2012, he listed his house, the Property, as his most valuable asset. On these schedules, Holley claimed the Property as exempt under Michigan's tenancy by the entireties (TBE) exemption. *See* Mich. Comp. Laws § 600.5451(1)(o) (2006).

In November 2012, Monson-Holley filed a separate voluntary petition for Chapter 13 bankruptcy in the Western District of Washington. Like her husband, Monson-Holley ranked the Property as her most valuable asset and claimed the TBE exemption.

The Western District of Washington bankruptcy court transferred Monson-Holley's case to the Eastern District of Michigan in February 2013. Three months later, the bankruptcy court converted Monson-Holley's case to a Chapter 7 proceeding. And in June 2013, it consolidated Monson-Holley's bankruptcy proceeding with her husband's for joint administration.

Following consolidation of their cases, the Debtors filed amended schedules, modifying certain information about the Property, including the citations for their exemption. They separately filed their last amended schedules in September 2013. The Trustee filed objections to these amended schedules, which the bankruptcy court denied.

Meanwhile, beginning in September 2013, Trustee Corcoran arranged to sell the Property to satisfy creditors' claims. She filed a motion for authority to sell it free and clear under 11 U.S.C. § 363, averring that a third party offered to purchase the house for $451,000. The Debtors initially objected to the proposed sale, but later petitioned the bankruptcy court for a reduced sales price so that they could arrange for their preferred third-party purchaser to buy it. They also stipulated to an order granting the Trustee's motion to sell, conditioned on the Debtors having the opportunity to seek their own purchaser. In December 2013, the bankruptcy court granted the Trustee's motion to sell, and then, per the Debtors' request, entered a separate order reducing the sales price to $315,000. Thereafter, the Trustee sold the Property to the Debtors' chosen purchaser, Bobble Clip, Inc., and retained the proceeds. The Debtors then signed a lease-option agreement with Bobble Clip, Inc.

In January 2015, the Trustee filed a final report and account of her administration of the Debtors' estates. She showed gross receipts of $330,698.41 from the Debtors' assets, approximately $320,000 of which came from the Property's sale, and a balance of $101,486.65 after paying the claims of the secured creditors. From that sum, the Trustee proposed paying herself $97,734.32 in administrative expenses.

The Debtors objected to the Trustee's final report and account, contending that the Property-sale proceeds were unavailable to pay administrative fees because they were exempt under Michigan's TBE law. A few months later, the Debtors filed what they styled as a Motion for Reconsideration, seeking to nullify the Property's sale, alleging self-dealing by the Trustee in conducting the sale.

The bankruptcy court denied the Debtors' objections to the final report, awarding the Trustee administrative expenses and fees, most of which came from the Property-sale proceeds.

The bankruptcy court also denied the Debtors' Motion for Reconsideration of the Sale Orders. On appeal, the district court affirmed both orders. This appeal followed.

**II.**

"We directly review the bankruptcy court's decision[s], and not the district court's decision below." *In re Parker*, 499 F.3d 616, 620 (6th Cir. 2007) (citing *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 130 (6th Cir. 1995)). We address the appealed orders in turn.

**A. *The Orders Authorizing Payment of the Trustee's Administrative Fees***

The Bankruptcy Code allows a Chapter 7 "debtor to 'exempt' . . . certain kinds of property from the estate, enabling him to retain those assets post-bankruptcy." *Law v. Siegel*, 134 S. Ct. 1188, 1192 (2014) (quoting 11 U.S.C. § 522(b)(1)). The Code also provides (with limited exceptions) that a debtor's exempted property "'is not liable' for the payment of 'any [prepetition] debt' or 'any administrative expense.'" *Id.* (quoting 11 U.S.C. § 522(c), (k)). Here, these debtors elected to forgo the federal exemptions and claim Michigan's exemptions. *See* 11 U.S.C. § 522(b)(3)(A). Relevant to this case, Michigan law permits a debtor to exempt all "real property, held jointly by a husband and wife as a tenancy by the entirety, except that this exemption does not apply with regard to a claim based on a joint debt of the husband and wife." Mich. Comp. Laws § 600.5451(1)(n) (2013).

In its opinion addressing the Debtors' objections to the Trustee's final report, the bankruptcy court accepted that the Debtors had each claimed this exemption, and it noted that their interest in the Property was exempt except with respect to joint creditors' claims. It nevertheless concluded that the Debtors "realized the full benefit of their claimed . . . exemption" through a "reduction in the sale amount" to their desired third-party purchaser, which allowed them an opportunity to repurchase the Property. Further, it reasoned that the Debtors, by filing

several amended schedules and changing their positions with respect to the Property's sale on numerous occasions, escalated the Trustee's costs. As a result, the bankruptcy court allowed the Trustee to charge the Property-sale proceeds to pay her administrative expenses, citing the equitable doctrine of laches and its authority under 11 U.S.C. § 105(a).

We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Parker*, 499 F.3d at 620 (citing *In re M.J. Waterman & Assocs.*, 227 F.3d 604, 607 (6th Cir. 2000)). We agree with the bankruptcy court that the Debtors properly claimed protection under Michigan's TBE exemption. But given the plain terms of this exemption, we disagree with its view that the exemption may be satisfied by other accommodation of the Debtors.

1) <u>The Debtors Claimed Michigan's Tenancy by the Entireties Exemption.</u>

We first consider the Trustee's challenge to the bankruptcy court's determination that the Debtors claimed Michigan's TBE exemption.

When the Debtors separately filed for bankruptcy in September and November 2012, each claimed an exemption for the Property under "Mich. Comp. Laws §[] 600.5451(1)(o)" in their original schedules. At that time, Mich. Comp. Laws § 600.5451(1)(o) denoted the appropriate citation for Michigan's TBE exemption. Mich. Comp. Laws § 600.5451(1)(o) (2012). In late 2012, Michigan changed the subsection setting forth the TBE exemption from "o" to "n." *Compare* Mich. Comp. Laws § 600.5451(1)(o) (2012), *with* Mich. Comp. Laws § 600.5451(1)(n) (2013). When the Debtors filed amended schedules in September 2013, they updated the supporting citation for their Property exemption, specifying Mich. Comp. Laws § 600.5451(1)*(n)* as the appropriate provision.

The Trustee now argues that the Debtors claimed Michigan's homestead exemption, which limits the value of the Debtors' exemption to $70,600. She reasons that the Debtors' amended schedules cited the statute subsection that was the homestead exemption under the law *before* Michigan revised the statute. That is, rather than credit the Debtors with recognizing the amended statutory citation, the Trustee asserts that the amended schedules reflected a choice to opt for the homestead exemption instead. The bankruptcy court declined to agree with that contorted reasoning (although not expressly addressing the argument).

We, too, are unpersuaded. While we acknowledge that a debtor may claim only those exemptions available at the time of the bankruptcy petition filing, *In re Wengerd*, 453 B.R. 243, 250 (B.A.P. 6th Cir. 2011) (citing *White v. Stump*, 266 U.S. 310, 313 (1924)), this rule does not require us to read the Debtors' September 2013 schedules in the manner the Trustee proposes. Although the subsection setting forth Michigan's TBE exemption did indeed change during the course of the Debtors' bankruptcy proceeding, their choice remained constant with just the section numbering going from "o" to "n." *Compare* Mich. Comp. Laws § 600.5451(1)(o) (2012), *with* Mich. Comp. Laws § 600.5451(1)(n) (2013).

The Trustee also points to Monson-Holley's amended schedules, noting that she checked the box indicating "debtor claims a homestead exemption that exceeds $155,675," and suggesting that this checked box reflects the Debtors' intent to claim the homestead exemption instead of the TBE exemption. But we do not find that the checked box trumps her selection of the TBE claim in her list of exemptions. All of Monson-Holley's previously filed schedules consistently claimed the TBE exemption by citing the appropriate provision from the prior version of § 600.5451. In sum, we find no basis to overturn the bankruptcy court's conclusion that the Debtors claimed Michigan's TBE exemption in their amended 2013 schedules.

2) <u>Michigan Law Insulates the Debtors' Property Proceeds.</u>

We now turn to the bankruptcy court's treatment of the exemption with respect to the Trustee's administrative fees. As noted, 11 U.S.C. § 522(k) prohibits a bankruptcy court from charging exempt property for administrative expenses (with exceptions not relevant here), even where a debtor has engaged in misconduct. *Siegel*, 134 S. Ct. at 1195–96. The bankruptcy court concluded that this principle did not bar payment of the Trustee's administrative expenses from the Property-sale proceeds because those proceeds were not exempt, reasoning that other benefits the Debtors received as accommodations in the Property's sale substituted for the exemption benefit. But this decision brushes off the exemption's plain terms. Michigan law protected the *entire* value of this couple's property—which, in this case, would be the cash proceeds from the Property's liquidation at the sale—minus deductions for those sums due to joint creditors. *See* Mich. Comp. Laws § 600.5451(1)(n) (2012)[1]; *accord In re Guzior*, 347 B.R. 237, 247 n.6 (Bankr. E.D. Mich. 2006) (calculating the value of Michigan's TBE exemption, under analogous common law principles, to be the entire value of the TBE property less secured and unsecured joint debts). While it seems the court may have looked for a workaround to allow the Trustee to be paid, the Debtors did *not* realize the benefit of the exemption simply through a lowered sales

---

[1] In *In re Raynard*, 327 B.R. 623 (Bankr. W.D. Mich. 2005), the court stated in dicta that § 600.5451(1)(n) (formerly § 600.5451(1)(o)), was unconstitutional under the Supremacy Clause as it conflicted with 11 U.S.C. § 522(c). 327 B.R. at 642–43. Section 522(c) provides that property claimed as exempt under § 522(b)—which allows a debtor to forego federal exemptions in favor of applicable state exemptions in bankruptcy—is not subject to any prepetition debt. *See* 11 U.S.C. § 522(b)–(c). The *Raynard* court reasoned, therefore, that because Mich. Comp. Laws § 600.5451(1)(n) allows a prepetition joint creditor to retain an interest in property exempted under § 522(b), it is inconsistent with federal law, and thus preempted. *Raynard*, 327 B.R. at 643.

Although *Raynard* has not been adopted by other courts and is not binding on this court, the *Raynard* court's reasoning is not applicable here. This case concerns § 600.5451(1)(n)'s application to an award of a trustee's administrative fees out of the proceeds of an exempt property's sale, and not a claim by prepetition joint creditors.

price to a third-party purchaser. The plain text of the law protected the Property-sale proceeds, minus the payouts to satisfy joint creditors' claims, from invasion by the Trustee to pay administrative expenses.

Regardless of the bankruptcy court's take on the multiple schedule amendments filed by these Debtors, which the court assessed as inappropriately impeding the bankruptcy process, it could not lawfully award any of the exempt Property's equity to pay the Trustee's fees. *See Siegel*, 134 S. Ct. at 1195. The bankruptcy court thus erred in permitting the Trustee to pay her administrative expenses from the Property-sale proceeds.

### B. The Order Denying the Debtors' Motion for Reconsideration

Aiming to preserve their interest in the Property, the Debtors' other tactic was to file a Motion for Reconsideration of the Sale Orders in May 2015, nearly a year and a half after the bankruptcy court authorized the Property's sale. Because the motion for reconsideration was untimely under the local bankruptcy rules, *see* Bankr. E.D. Mich. R. 9024-1(a)(1), the bankruptcy court construed the pleading as a motion for relief from an order of judgment under Federal Rule of Civil Procedure 60(b)(6). It denied the motion, reasoning that the Debtors could not point to any exceptional or extraordinary circumstances that would warrant vacating the Sale Orders.

We review a denial of a Rule 60(b) motion for relief from judgment for abuse of discretion. *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012) (citing *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010)). A court "abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Ross v. Duggan*, 402 F.3d 575, 581 (6th Cir. 2004) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

We find no abuse of discretion in the bankruptcy court's decision to deny the Debtors' motion seeking reconsideration or relief from the Sale Orders.

Rule 60(b)(6) is a catch-all provision that authorizes courts to grant relief from judgment for "any [] reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under this rule is appropriate only in "unusual and extreme situations where principles of equity *mandate* relief." *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). No unusual or extreme circumstances exist here. The Debtors previously agreed to the sale and successfully petitioned the bankruptcy court to modify the sale price to their desired figure. Although the Debtors now argue that the Trustee should not have sold the Property, the avenues for that sort of challenge have long since closed. *See Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989) ("The parties may not use a Rule 60(b) motion as a substitute for an appeal or as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise.").

Once a bankruptcy court authorizes a sale of property under § 363, as the court below did here, § 363(m) provides that reversal on appeal "does not affect the validity of [the] sale" to a good faith purchaser "unless such authorization and such sale . . . were stayed pending appeal." 11 U.S.C. § 363(m). Subsection 363(m) thus sets forth a "mootness rule" which generally "applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets." *Parker*, 499 F.3d at 620–21 (quoting *In re 255 Park Plaza Assocs. Ltd. P'ship*, 100 F.3d 1214, 1216 (6th Cir. 1996)).

Obviously, the Debtors did not obtain a stay of the Sale Orders, and they do not argue that Bobble Clip, Inc. purchased the Property in bad faith. *See* 11 U.S.C. § 363(m).

Consequently, Debtors have invoked no viable procedural vehicle to reverse or nullify the Property's sale.

**III.**

We VACATE the bankruptcy court's orders with respect to the payment of the Trustee's administrative fees, REMANDING for proceedings consistent with this opinion, but we AFFIRM the bankruptcy court's order denying the Debtors' motion for reconsideration.