932 F.2d 117
 UNITED STATES of America, Appellee,
v.
Anthony SALERNO, Vincent Cafaro, Vincent Di Napoli, Louis Di
Napoli, Guiseppe Sabato, Carmine Della Cava, Thomas Cafaro,
John Tronolone, Milton Rockman, Nicholas Auletta, Edward J.
Halloran, Alvin O. Chattin, Richard Costa, Alphonse Mosca,
Neil Migloire and Matthew Ianniello, Defendants,
Blue Circle Atlantic, Inc., Appellant.
 No. 151, Docket 90-1241.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 10, 1990.
Decided April 24, 1991.
 
 Robert L. Tofel, Tofel, Berelson & Saxl, New York City (Lawrence E. Tofel, of counsel), for appellant.
 Alan M. Cohen, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., Mark Hellerer, Edward T. Ferguson, III and James L. Garrity, Jr., Asst. U.S. Attys., of counsel), for appellee.
 David M. Brodsky, Schulte, Roth & Zabel, New York City (MaryJane C. Shimsky, of counsel), for intervenor-appellee.
 Before MAHONEY and WALKER, Circuit Judges, and LEVAL, District Judge*.
 WALKER, Circuit Judge:
 
 
 1
 Blue Circle Atlantic, Inc. ("Blue Circle") appeals from two orders of the United States District Court for the Southern District of New York, Mary Johnson Lowe, Judge, authorizing the government to turn over to the trustee in bankruptcy its interest in certain companies forfeited in a criminal proceeding and authorizing the trustee to sell substantially all the assets of those companies pursuant to an order of the United States Bankruptcy Court for the Southern District of New York. Blue Circle, an unsecured creditor of the bankrupt companies, asserts that the government's relinquishment of its interest in the companies to the trustee violated both the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1961, et seq. ("RICO") and the due process clause of the Fifth Amendment. Because Judge Lowe's order has already been affirmed on appeal by this court and any issues not addressed in that order are now moot, we dismiss the appeal.
 
 BACKGROUND
 
 2
 Blue Circle is an unsecured trade creditor of two cement companies: Marine Pollution Services, Inc. d/b/a Certified Concrete Co., Inc. ("Certified") and Transit Mix Concrete Corp. ("Transit Mix"). Between March, 1986, and August, 1987, Blue Circle supplied Certified and Transit Mix with cement ingredients worth $1,192,775.45.
 
 
 3
 Defendant Edward J. Halloran owned all of Certified and substantially all of the stock of Big Apple Concrete Co., Inc. ("Big Apple"), which in 1982 was merged into Transit Mix. In March, 1986, Halloran, with others, was indicted for mail fraud, racketeering, and making illegal labor payoffs in violation of RICO. On March 21, 1986, the government obtained from the district court a sealed ex parte Order of Restraints and Prohibitions ("restraining order") enjoining the sale, transfer or encumbrance of Halloran's assets. The criminal case was assigned to Judge Lowe.
 
 
 4
 In August, 1987, during the course of criminal proceedings against Halloran, Certified and Transit Mix filed petitions in the bankruptcy court for reorganization under Chapter 11 of the Bankruptcy Code. The government agreed to withdraw its objections to the bankruptcy filing upon the condition that any bankruptcy court decision concerning the use, sale, or lease of Certified or Transit Mix assets would be effective only on approval by Judge Lowe. The bankruptcy proceeding was assigned to Judge Cornelius Blackshear. Further, in September, 1987, the bankruptcy court appointed David M. Brodsky as the Chapter 11 operating trustee for Certified and Transit Mix (the "trustee").
 
 
 5
 In May, 1988, following a trial before Judge Lowe, a jury convicted Halloran of the racketeering charges. The jury then returned a verdict forfeiting all of Halloran's interest in the stock, assets, monies and property of Certified and Big Apple.
 
 
 6
 In October, 1988, Judge Lowe entered the First Order of Forfeiture ("forfeiture order"), directing the forfeiture of Halloran's property and incorporating by reference the 1986 restraining order. The government argued that the forfeiture order encompassed all of the assets of Certified and Transit Mix; the bankruptcy trustee maintained that the forfeiture order covered only Halloran's (now worthless) stock holdings in the companies.
 
 
 7
 In December, 1988, the government reviewed all proofs of claim filed by creditors of Certified and Transit Mix in the bankruptcy court. As to two creditors of the bankrupt companies, First Interstate Credit Alliance Corp. ("Credit Alliance") and New York Cement Co. ("NYCEMCO"), the government asserted that they might have known about Halloran's racketeering activity while extending credit to Certified and Transit Mix, and objected to any distribution to them, absent a showing under RICO that the creditors were "reasonably without cause to believe that" Certified and Transit Mix had been "subject to forfeiture" due to Halloran's racketeering activities. 18 U.S.C. Sec. 1963(l )(6)(B).
 
 
 8
 In March, 1990, after a lengthy search for purchasers of the assets, the bankruptcy trustee sought the bankruptcy court's permission to sell substantially all the assets of Certified and Transit Mix to a group of companies controlled by John Quadrozzi and Michael DiBenedetto. Those companies were: Quad Acquisition Corporation, Red Hook Concrete Loading Corporation, Maspeth Concrete Loading Corporation, Edgewater Concrete Loading Corporation, Queens Concrete Delivery & Leasing Corporation, Maspeth Truck Depot Corporation, Manhattan West Concrete Loading Corporation and Harlem Concrete Loading Corporation (collectively "the Quad companies"). John Quadrozzi, who has acknowledged making payments to a reported member of the Lucchese crime family in order to fix prices in the concrete industry, is a principal owner of NYCEMCO. Nonetheless, the government consented to the sale to the Quad companies.
 
 
 9
 The final sale price was $8 million, reduced from an earlier asking price of $12.5 million. The terms of sale required the Quad companies to pay the trustee $2.2 million in cash, release post-petition claims of approximately $2.3 million, cure certain obligations worth $1.5 million and issue secured promissory notes and mortgages worth over $3 million to which liens of the secured creditors of Certified and Transit Mix would attach.
 
 
 10
 On March 16, 1990, the bankruptcy court conducted an evidentiary hearing on the proposed sale. Although the Creditors Committee, which included Blue Circle, was aware of the proposed terms of the sale prior to March 16, Blue Circle was not informed of the sale's final terms until the night before the hearing. Its request to adjourn the hearing was denied.
 
 
 11
 At the hearing, Blue Circle, the only objector to the proposed sale, raised constitutional and statutory objections and examined the trustee and Quadrozzi. The bankruptcy court quashed Blue Circle's subpoena of the Assistant United States Attorney, however, since insufficient time was provided for official clearance of his testimony. See 28 C.F.R. Sec. 16.22(c). The government was permitted to state that it approved of and supported the sale. After the hearing, Judge Blackshear approved the sale, signing an order of sale dated March 16, 1990.
 
 
 12
 Thereupon, the government sought permission from Judge Lowe to modify the RICO forfeiture order to permit the transfer of the forfeited assets to the trustee. Blue Circle then requested a hearing before Judge Lowe on the proposed modification. The government opposed a hearing claiming that Blue Circle had enjoyed a full and fair opportunity to be heard in the bankruptcy court. On March 27, 1990, Judge Lowe denied a further hearing, authorized the government to relinquish the forfeited assets to the trustee, and approved a consent order between the government and the buyers of the companies that enabled the government to monitor Certified and Transit Mix for seven years for signs of renewed organized crime influence. On March 27, 1990, Judge Lowe also approved the sale of the assets in bankruptcy by endorsing the bankruptcy court's March 16 sale order.
 
 
 13
 The following day, Blue Circle noticed an appeal to the district court of the bankruptcy court's March 16 order, but did not seek a stay of the sale pending appeal. Blue Circle never perfected that appeal.
 
 
 14
 With the sale of Certified and Transit Mix scheduled for March 30, 1990, a panel of this court (Oakes, C.C.J., Winter, C.J., and Patterson, J.) granted Blue Circle leave to take an immediate appeal from Judge Lowe's March 27 order authorizing the government's relinquishment of the forfeited property to the bankruptcy trustee. At oral argument on March 30, 1990, the panel heard argument on the two issues identified in Blue Circle's notice of motion for expedited relief: (1) whether the government may, under RICO, relinquish title to forfeited property to enable the bankruptcy court to sell that property over the objections of a bona fide creditor; and (2) whether Blue Circle was unlawfully denied an evidentiary hearing in the district court prior to Judge Lowe's approval of the relinquishment and the sale.
 
 
 15
 The panel affirmed Judge Lowe's order, in a ruling from the bench. The panel then denied Blue Circle's application for a stay of the sale pending application to the Circuit Justice of the Supreme Court. Chief Judge Oakes stated in open court:
 
 
 16
 [W]e believe that there are not grounds for us to reverse the district court's authorization to the government to release the assets. The sale of the assets [by the trustee] is not before us. You have had as expedited a hearing of the issues as is possible under the circumstances, and if you still wish to pursue your appeal, it may well be mooted by today's, it may, it may not be. I have no idea. But, we are not granting any stay of the sale and, I think that disposes of it.
 
 
 17
 The sale of the assets to Certified and Transit Mix to the Quad companies and DiBenedetto closed on March 31, 1990.
 
 
 18
 Blue Circle then appealed from Judge Lowe's March 27 orders relinquishing the assets to the trustee and approving their sale in bankruptcy.
 
 DISCUSSION
 
 19
 On appeal, Blue Circle seeks a ruling that would compel a sale of Certified and Transit Mix directly by the government in accordance with RICO provisions, rather than by the bankruptcy trustee. According to Blue Circle, such a sale would disqualify post-petition claims against the bankruptcy assets by the trustee for $6 million and by NYCEMCO for $2.3 million. To this end, Blue Circle makes three arguments.
 
 
 20
 Blue Circle's first two arguments are challenges to the relinquishment order under RICO and due process. Blue Circle first contends that the district court's relinquishment order violated RICO, 18 U.S.C. Sec. 1963(l )(2) and Sec. 1963(l )(6)(B)[1] by approving the government's relinquishment of the forfeited assets to the bankruptcy trustee over Blue Circle's objection. Blue Circle argues that as an unsecured trade creditor, it qualifies as a bona fide purchaser for value under RICO, and is thus entitled to RICO's explicit guarantee that the order of forfeiture will exempt its interest in the property. See 18 U.S.C. Sec. 1963(l )(6)(B); United States v. Mageean, 649 F.Supp. 820 (D.Nev.1986), aff'd, 822 F.2d 62 (9th Cir.1987). Second, Blue Circle contends that by denying it an evidentiary hearing before approving the March 27 relinquishment order, the district court violated the requirements of RICO and denied it due process of law.
 
 
 21
 The government argues that these two arguments are foreclosed to Blue Circle because they were presented to us on March 30, 1990, and were decided. We agree.
 
 
 22
 Our March 30, 1990 disposition of the expedited appeal is the law of the case. Absent a compelling reason, Blue Circle may not relitigate the issues resolved by that ruling. A reason justifying relitigation may consist of an intervening change of law, significant new evidence, or the need to correct a clear error of law or manifest injustice. See, e.g., Sanders v. Sullivan, 900 F.2d 601, 605 (2d Cir.1990); Doe v. New York City Dept. of Social Services, 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).
 
 
 23
 Here, Blue Circle advances two contentions for revisiting the issues of whether the government's relinquishment of forfeited assets to the bankruptcy trustee is prohibited by either RICO or the Fifth Amendment. We need not linger over the first, namely, that this court lacked an adequate opportunity to consider the "complex, unique and important issues of law" raised at the hastily convened March 30 hearing. The record belies this assertion. Moreover, any disadvantage Blue Circle may have suffered due to the speed with which oral argument was scheduled resulted solely from its own urgent request for immediate consideration.
 
 
 24
 Blue Circle's second argument is that our March 30, 1990 ruling was, in effect, a denial of a stay of Judge Lowe's orders, rather than an affirmance on the merits. In support, Blue Circle cites Chief Judge Oakes' statement from the bench that "we are not granting any stay of the sale and, I think that disposes of it," as well as his statement that further appeal might (or might not) lie. Blue Circle also points to the ambiguous phrasing of our docket entry of March 30:
 
 
 25
 Order granting motion by Appellant Blue Circle Atlantic--to expedite appeal; it is ordered upon consideration of the motion that the parties may proceed on appeal ...
 
 
 26
 Upon a review of the full record of the March 30th appeal, we believe that the panel was presented with, fully considered and determined--albeit under time constraints--the merits of Blue Circle's challenges to the relinquishment order under RICO and the Fifth Amendment.
 
 
 27
 In its notice of motion for an expedited appeal, filed with this Court on March 29, 1990, Blue Circle requested an "[e]xpedited hearing of issues." In the affidavit accompanying the Notice of Motion, Blue Circle's counsel stated that such an "immediate hearing and determination of the issues raised by th[e] appeal" was necessary because the sale was set to close on or before March 31, 1990. In its written submissions to the panel, Blue Circle detailed the history of the litigation and its arguments on appeal. Blue Circle received the expedited hearing it requested. Both the RICO and due process arguments were presented and considered. Judge Oakes delivered the panel's ruling, stating that the panel "believe[s] there are not grounds to reverse [the relinquishment order]." This adjudicated the appeal.
 
 
 28
 As to Chief Judge Oakes' remark that "we are not granting any stay of the sale," Blue Circle cites it out of context. Blue Circle argues that those words constituted the ruling, and that the ruling did not purport to adjudicate the substantive claims. Blue Circle did not move for a stay, however, when it filed its Notice of Motion; its motion sought expedited hearing and determination of the issues. Only at oral argument did Blue Circle request a stay. Judge Oakes' statement that the court would not grant a stay was uttered in addition to the court's ruling that "there are not grounds for us to reverse...." Blue Circle then requested a stay, which was also denied, in order to maintain the status quo pending an appeal to the Circuit Justice of the Supreme Court. Thus, in the context of the argument, the Chief Judge's announcement of the ruling does not lend itself to the interpretation Blue Circle now seeks to place on it.
 
 
 29
 Blue Circle's third and final argument advanced on this appeal is a challenge, not to the relinquishment order, but to the district court's order approving the terms of the bankruptcy sale. Blue Circle objects to these terms on two counts: first, that NYCEMCO's post-petition claims of $2.3 million were discharged through a reduction in the Quad companies' purchase price; and second, that the buyers issued a promissory note to Credit Alliance, secured by liens on certain of the assets sold. Blue Circle contends that these terms benefited NYCEMCO and Credit Alliance in contravention of RICO, which directs the Attorney General to dispose of forfeited property "making due provision for the rights of any innocent persons," and which also prohibits sale of forfeited property which benefits creditors not "reasonably without cause to believe that the property was subject to forfeiture" at the time they became creditors. See 18 U.S.C. Secs. 1963(f), (g)(4), (l )(6)(B).
 
 
 30
 This argument was concededly not presented to the March 30 panel. However, appellees raise two arguments why this claim too is foreclosed. First, the trustee, as intervenor-appellee, argues that we lack jurisdiction to address the question. The trustee contends that issues intrinsic to the bankruptcy court's sale order must first be addressed in an appeal to the district court from the bankruptcy court order, rather than in an appeal to this court from Judge Lowe's endorsement of that order. See 28 U.S.C. Secs. 158(a), 158(d). Second, the government argues that the issue is now moot, because the sale to the Quad companies closed on March 31.
 
 
 31
 The unusual hybrid nature of the order below gives rise to confusing issues of appealability. It may well be as the trustee contends that, were this merely a bankruptcy judge's final order confirming sale, appeal would lie to the district court under 28 U.S.C. Sec. 158(a), prior to any appeal to the Court of Appeals under Sec. 158(d). On the other hand, the order also partook of a district court's final adjudication entered in the administration of a forfeited RICO estate. Appeal from such a final order would lie in the Court of Appeals under 28 U.S.C. Sec. 1291. In view of the fact that, as noted below, the appeal of the sale order is moot, we see no need to resolve whether Sec. 158(a) would mandate a prior appeal to the district court before appeal to this court.
 
 
 32
 The government is correct in arguing that the appeal of the sale order is moot. Blue Circle identifies two aspects of the sale as violations of RICO. Blue Circle argues that by reducing the price paid by the buyers, the sale amounts to an improper distribution of forfeited assets to NYCEMCO. Blue Circle also contends that the sale represents an improper distribution to Credit Alliance, which received a promissory note issued by the buyers and secured by certain of the purchased assets.
 
 The Bankruptcy Code, however, precludes:
 
 33
 the reversal or modification on appeal of an authorization ... of a sale or lease of property ... to an entity that purchased or leased such property in good faith ..., unless such authorization and such sale or lease were stayed pending appeal.
 
 
 34
 11 U.S.C. Sec. 363(m). The consummation of the sale was not stayed. The instant appeal was briefed and argued months after the sale closed. It is thus beyond the power of this Court to rewrite the terms of the trustee's sale of the assets of Certified and Transit Mix to the Quad companies. See In re Stadium Management Corp., 895 F.2d 845, 848 (1st Cir.1990) (appeal of trustee's sale of bankrupt assets is moot after sale is complete); In re The Charter Co., 829 F.2d 1054, 1056 (11th Cir.1987), cert. denied, 485 U.S. 1014, 108 S.Ct. 1488, 99 L.Ed.2d 715 (1988); In re Vetter Corp., 724 F.2d 52, 54-55 (7th Cir.1983); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr.S.D.N.Y.1990).
 
 
 35
 Our conclusion that we must leave the terms of sale undisturbed furthers the policy of finality in bankruptcy sales. Moreover, it assists bankruptcy courts in maximizing the price for assets sold in such proceedings. Otherwise, potential buyers would discount their offers to the detriment of the bankrupt's estate by taking into account the risk of further litigation and the likelihood that the buyer will ultimately lose the asset, together with any further investments or improvements made in the asset.
 
 
 36
 With regard to the promissory note issued by the Quad companies to Credit Alliance, we observe that even if we were now to cancel that note, it would affect neither the size of the bankrupt's estate nor the amount that Blue Circle could recover on its unsecured claim.
 
 
 37
 We observe further that the sale order approved by Judge Lowe provides that any distribution of cash proceeds of the asset sale is specifically subject to subsequent bankruptcy court approval. Nothing in this decision forecloses Blue Circle from raising in that court any appropriate objection to such distribution.
 
 
 38
 Unable to fashion the remedy sought by Blue Circle, we must accordingly dismiss the appeal on this issue as moot. See also Northwest Environmental Defense Center v. Gordon, 849 F.2d 1241, 1244-45 (9th Cir.1988). We also vacate our order of September 25, 1990, which stayed distribution of the proceeds of the sale in this matter.
 
 
 39
 The appeal is dismissed.
 
 MAHONEY, Circuit Judge, dissenting:
 
 40
 I do not believe that the merits of this appeal were resolved by a prior panel of this court, and would not in any event apply the "law of the case" doctrine on this record to prevent consideration of the merits by this panel. Further, although 11 U.S.C. Sec. 363(m) (1988) precludes the voiding of a sale to a good faith purchaser in the absence of a stay pending appeal, nothing in that statute moots our consideration of issues relating to the distribution of the sale proceeds, as witness our stay of the distribution of those proceeds by order entered September 25, 1990 (pending the further order of this court). I therefore respectfully dissent.
 
 
 41
 I will elaborate briefly only with respect to the initial consideration of this appeal by a panel of this court on March 30, 1990. The transcript of that hearing is admittedly ambiguous as to what was decided. It is clear, however, that the March 30 hearing as to the district court's March 27 order occurred so hastily only because the asset sale was scheduled for, and in fact occurred on, March 31, 1990. Further, rather than write an opinion or summary order addressing the merits, the panel entered the following order the same day that oral argument was heard: "It is hereby ordered upon consideration of the motion [for expedited appeal] that the parties may proceed on appeal. It is furthered [sic] that the stay requested orally to go to the Circuit Justice is denied." (Emphasis added.) The order was signed by a deputy clerk of the court, presumably in accordance with the instructions of the court. See Fed.R.App.P. 36; 2d Cir.R. 0.18(5).
 
 
 42
 Thereafter, without the filing of any new notice of appeal, appendices and briefs were filed and exchanged, and oral argument was heard, in the normal course. The appellant is therefore entitled to some sense of shock and surprise, which I candidly confess to sharing, that all this was wasted motion, because the appeal had been finally determined more than six months prior to its oral argument before this panel. Unlike the Mets and Yankees, it is not ordinarily anticipated that the Second Circuit may opt to schedule an appeal as a doubleheader.
 
 
 43
 Finally, the "law of the case" doctrine is discretionary in its application. See, e.g., United States v. Adegbite, 877 F.2d 174, 178 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989); Doe v. New York City Dep't of Social Servs., 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); McClain v. United States, 676 F.2d 915, 917 (2d Cir.), cert. denied, 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). Accordingly, even if the record of this appeal might be read to indicate that the March 30, 1990 panel addressed its merits, I would revisit the issues necessarily accorded only the most hasty and cursory consideration at that time.
 
 
 
 *
 Hon. Pierre N. Leval, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 18 U.S.C. Sec. 1963(l )(2) provides:
 Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States ... may petition the court for a hearing to adjudicate the validity of his alleged interest in the property....
 18 U.S.C. Sec. 1963(l )(6) provides:
 If, after [a] hearing, the court determines that the petitioner has established by a preponderance of the evidence that--
 (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
 the court shall amend the order of forfeiture [to exempt from forfeiture the bona fide purchaser's interest] in accordance with its determination.