*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0343p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: ROBERT E. PARKER,

> *Debtor.*

---

ROBERT E. PARKER,

> *Defendant-Appellant,*

*v.*

THOMAS W. GOODMAN,

> *Plaintiff-Appellee.*

No. 06-5940

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 06-00059—Gregory F. Van Tatenhove, District Judge.

Argued: June 5, 2007

Decided and Filed: August 28, 2007

Before: MARTIN, BATCHELDER, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** John J. Mueller, JOHN J. MUELLER, LLC, Cincinnati, Ohio, for Appellant. Cynthia L. Effinger, SEILLER WATERMAN, Louisville, Kentucky, for Appellee. **ON BRIEF:** John J. Mueller, JOHN J. MUELLER, LLC, Cincinnati, Ohio, for Appellant. Cynthia L. Effinger, David M. Cantor, SEILLER WATERMAN, Louisville, Kentucky, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. The instant appeal arises from adversary proceedings brought in U.S. Bankruptcy Court. Defendant, Robert E. Parker, the debtor below, appeals the district court's order affirming the bankruptcy court's order permanently enjoining Defendant from prosecuting a state legal malpractice claim against Plaintiff, Thomas W. Goodman, his former counsel. For the reasons that follow, we **AFFIRM**.

## BACKGROUND

In July 2002, Defendant hired Plaintiff, a Kentucky lawyer, to act as his counsel in Chapter 7 bankruptcy proceedings brought to discharge Defendant's debts. Defendant did so on the advice of counsel after a Kentucky state court entered judgment against him in an estate dispute brought by his siblings, finding Defendant liable in the amount of $165,000. On November 1, 2002, Plaintiff filed a Chapter 7 bankruptcy petition on Defendant's behalf. The bankruptcy court appointed Robin Browning Brock ("Brock") to serve as trustee of Defendant's bankruptcy estate. Defendant discharged Plaintiff as counsel on August 5, 2004.

Nearly one year later, on July 15, 2005, Defendant brought suit against Plaintiff in Kentucky state court asserting three claims for relief – two for legal malpractice, and a third for breach of fiduciary duty.[1] Both Defendant and Trustee Brock, as trustee of Defendant's bankruptcy estate, were named plaintiffs in that case. Defendant's complaint in Kentucky state court (hereinafter collectively "legal malpractice claim" or "legal malpractice suit") alleged that Plaintiff acted as his counsel "concerning the possibility [Defendant] could obtain relief of some kind" by filing a petition in bankruptcy until August 5, 2004, at which time Defendant terminated the attorney-client relationship. (J.A. at 26) The complaint asserts that Plaintiff prepared and filed Defendant's Chapter 7 petition, and "represented [Defendant] in all matters involved in and all matters related to" the bankruptcy proceeding. (*Id*. at 27)

In support of the two legal malpractice claims for relief, Defendant alleged that Plaintiff "negligently represented" Defendant, "breached one or more legal duties he owed" Defendant, and "deviated adversely from the standard of care that applied to him." (J.A. at 30) He additionally asserted that Plaintiff "failed to advise [Defendant] concerning certain matters about which [Plaintiff] had a legal duty to advise" him.[2] (*Id*. at 32) The third claim, for breach of fiduciary duty, purportedly followed Plaintiff's refusal to turn over Defendant's original case file upon request. (*Id*. at 34) Apparently, Plaintiff initially told Defendant that a copy of the approximately 800-page file would be available for purchase at a rate of 50 cents per page or for the cost of copying at a commercial print shop. (*Id*. at 28-29) On the matter of damages, Defendant asserted that each instance of legal malpractice left him in a worse financial position, damaging both his reputation and credit record "with consequent future damages." (*Id*. at 31, 33) For the breach of fiduciary duty claim, based solely on Plaintiff's actions concerning the original case file, Defendant alleged financial damages only. Defendant alleged that he retained counsel to assist him in obtaining the original file without paying Plaintiff's quoted fee, and although ultimately successful in doing so, that Plaintiff should be liable for his attorney's fees. All relief requested in the state law claim was sought "in favor of [Defendant] and Trustee Brock." (*Id*. at 35-37)

Trustee Brock filed a notice of intent to abandon the bankruptcy estate's interest in Defendant's legal malpractice suit against Plaintiff, and no interested parties objected. Nevertheless,

---

[1]Defendant also filed a legal malpractice suit against Howard Keith Hall ("Hall"), Michael Lucas, and Lucas & Hall, the attorneys and law firm that represented Defendant in the earlier estate dispute, on March 23, 2005. Hall introduced Defendant to Plaintiff and undertook, along with Plaintiff, to represent Defendant in his appeal from the adverse state court judgment in the estate matter. The malpractice suit against Hall et al. is not a matter in dispute in the instant action.

[2]Defendant apparently decided to discharge Plaintiff and file suit against him when Defendant's siblings (and judgment creditors) instituted adversary proceedings in bankruptcy court to enforce their interest in the $165,000 state court judgment against Defendant. Defendant, in his state court deposition testimony, recalls that Plaintiff instructed him "that if he filed bankruptcy, it would stop everything" with respect to the judgment against him. (J.A. at 318) In Defendant's view, Plaintiff never adequately explained the consequence of filing bankruptcy, and never mentioned the possibility that his siblings could proceed against him even in bankruptcy. In fact, Defendant got the exact opposite impression: that his siblings could not "come to bankruptcy court and fight [him]." (*Id*. at 369-70)

on May 9, 2005, the bankruptcy judge entered an order voiding Trustee Brock's notice of intent to abandon the estate's interest in the lawsuit. Subsequently, Trustee Brock sold the legal malpractice claim against Plaintiff at public auction to Lawyers Mutual Insurance Company ("Lawyers Mutual"), Plaintiff's malpractice insurer, for the sum of $10,000. On September 8, 2005, the bankruptcy judge entered an order approving the sale (hereinafter "Order of Sale"). Defendant failed to appeal the Order of Sale, and did not obtain a stay. Lawyers Mutual consummated the sale by paying in full the $10,000 purchase price to the bankruptcy estate. Notwithstanding the consummated sale, Defendant continued to prosecute the legal malpractice suit in Kentucky state court.[3]

As a result, Plaintiff initiated an adversary proceeding in U.S. Bankruptcy Court seeking injunctive relief. Specifically, Plaintiff asked the bankruptcy court to enjoin Defendant from prosecuting the legal malpractice suit against Plaintiff on the basis that (1) it had been sold to Lawyers Mutual, and (2) in the alternative, Defendant lacked standing to prosecute the suit, which constituted property of the bankruptcy estate. On December 27, 2005, the bankruptcy judge issued a preliminary injunction prohibiting Defendant from continuing to prosecute the state legal malpractice suit. On February 23, 2006, the bankruptcy judge ordered that the preliminary injunction become permanent. Defendant timely appealed the injunction to the U.S. District Court. The district court affirmed the bankruptcy court's permanent injunction on June 15, 2006. Defendant then timely appealed to this Court.

## DISCUSSION

### A.     Standard of Review

We directly review the bankruptcy court's decision, and not the district court's decision below. *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 130 (6th Cir. 1995). A *de novo* standard of review applies to the bankruptcy court's legal conclusions, while factual findings will only be disturbed if clearly erroneous. *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607 (6th Cir. 2000).

### B.     The Injunction Properly Issued

On appeal, Defendant contends that the bankruptcy court erred when it enjoined Defendant from prosecuting the legal malpractice suit in Kentucky state court. In support of his challenge, Defendant advances various arguments, but the crux appears to be that the bankruptcy court's Order of Sale was not valid. First, Defendant claims that Kentucky public policy prohibits the sale of legal malpractice claims. Second, Defendant argues that the bankruptcy court lacked jurisdiction to enter the Order of Sale. The bankruptcy court lacked jurisdiction, Defendant says, because the legal malpractice suit – or at the very least, one claim for relief – accrued after his bankruptcy petition was filed and, accordingly, was not "property of the estate." We affirm the bankruptcy court's injunction.

#### 1.     *Statutory Mootness (11 U.S.C. § 363(m))*

Defendant's myriad formulations of his challenge to the bankruptcy court's injunction all sound in a thinly veiled attempt to collaterally attack the bankruptcy court's now final Order of Sale. Plaintiff contends that 11 U.S.C. § 363(m) renders attacks on the Order of Sale moot inasmuch as Defendant failed to obtain a stay of the sale. Indeed, Defendant freely admits he took no appeal from the Order of Sale, and that the sale has been fully consummated. We agree with Plaintiff.

---

[3]Defendant's pleadings below indicate that the Pike Circuit Court stayed all further proceedings in the legal malpractice suit and held in abeyance all pending motions.

Thus, we begin by dispelling any notion that we sit in review of the bankruptcy court's Order of Sale. Defendant's attempts to assail the validity of the bankruptcy court's Order of Sale, however indirectly, are statutorily moot.

Title 11 U.S.C. § 363(b) permits a bankruptcy trustee to "sell . . . property of the estate" after notice and hearing. Once the bankruptcy court authorizes the sale of property under § 363, that same section limits appellate review:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). By its terms then, "[b]ankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets." *In re 255 Park Plaza Assocs. Ltd. P'ship*, 100 F.3d 1214, 1216 (6th Cir. 1996) (internal quotation marks and citation omitted). What is more, it "limits appellate review of a consummated sale . . . *regardless of the merits of legal arguments raised against it.*" *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005) (emphasis added). A majority of our sister circuits construe § 363(m) as creating a *per se* rule automatically mooting appeals for failure to obtain a stay of the sale at issue. *See In the Matter of The Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001); *United States v. Salerno*, 932 F.2d 117, 122-123 (2d Cir. 1991); *In re Stadium Mgmt. Corp.*, 895 F.2d 845, 847 (1st Cir. 1990); *Matter of Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990); *In re The Charter Co.*, 829 F.2d 1054,1056 (11th Cir. 1987); *In re Sax*, 796 F.2d 994, 997 (7th Cir. 1986); *In re Magwood*, 785 F.2d 1077, 1080 (D.C. Cir. 1986). The Third Circuit applies an alternative two part approach, finding an appeal moot under § 363(m) if the party failed to obtain a stay *and* reviewing courts cannot grant effective relief without impacting the validity of the sale. *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir. 1998) (rejecting the *per se* rule); *see also Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 649 (3d Cir. 1997) (declining to adopt either the *per se* rule or the two part approach). Our Circuit has yet to decide whether to adopt the *per se* rule preferred by the majority of sister circuits. Because the result in the instant case will be the same under either formulation, we again decline to adopt one controlling approach.

Under the majority approach, Defendant's attempts to impugn the validity of the Order of Sale must necessarily fail. The bankruptcy court authorized the Order of Sale pursuant to 11 U.S.C. § 363, thereby conveying the legal malpractice suit to Lawyers Mutual in its entirety.[4] Defendant neither sought nor obtained a stay of the sale, nor did Defendant appeal from the Order of Sale. Rather, the sale became final and was consummated. Defendant's failure to obtain a stay renders moot any direct challenge to the Order of Sale. *See The Ginther Trusts*, 238 F.3d at 689; *Salerno*, 932 F.2d at 122-123; *Stadium Mgmt. Corp.*, 895 F.2d at 847; *Gilchrist*, 891 F.2d at 561; *The Charter Co.*, 829 F.2d at 1056; *Sax*, 796 F.2d at 997; *Magwood*, 785 F.2d at 1080.

The same result follows under the Third Circuit's two part approach. *See Krebs Chrysler-Plymouth*, 141 F.3d at 499. First, Defendant failed to obtain a stay of the sale. Second, no effective relief could be granted without impacting the validity of the sale. *See id.* This second requirement flows from one underlying rationale for the bankruptcy mootness provision – that consummation of a sale in bankruptcy greatly limits the ability of reviewing courts to fashion effective relief. *Ranallo*, 112 F.3d at 648-49; *Stadium Mgmt. Corp.*, 895 F.2d at 848. "A stay serves to maintain the

---

[4]By its terms, the Order of Sale conveyed "Civil Action No. 05-CI-00979" to Lawyers Mutual. (J.A. at 38) Civil Action No. 05-CI-00979 consists of all three claims for relief – the two legal malpractice claims, and the breach of fiduciary duty claim.

status quo pending appeal, thereby preserving the ability of the reviewing court to offer a remedy and holding at bay the reliance interests in the judgment that otherwise militate against reversal of the sale." *In re CGI Indus., Inc.*, 27 F.3d 296, 299 (7th Cir. 1994). In his reply brief, Defendant argues that we can grant some suitable relief without affecting the sale. Specifically, Defendant claims that "resolution of the dispute between Parker and Goodman concerning the right to prosecute the lawyer-malpractice claims, would in no way affect the creditors of the bankruptcy estate" because the trustee already received payment from Lawyers Mutual in satisfaction of the sale. (Reply Br. at 18-19) Suitable relief in Defendant's mind consists of a judgment permitting Defendant to prosecute the legal malpractice suit notwithstanding the now final § 363 sale. Quite clearly, such relief would materially modify the asset purchased by Lawyers Mutual. In fact, the very value of the asset to Lawyers Mutual, Plaintiff's malpractice insurer, lies in foreclosing prosecution of those claims. "One cannot challenge the validity of a central element of a purchase . . . without challenging the validity of the sale itself." *The Charter Co.*, 829 F.2d at 1056; *see also Stadium Mgmt. Corp.*, 895 F.2d at 849 (rejecting relief sought because it "would change the deal that the purchaser made"). Any relief permitting Defendant to prosecute the state law claims would therefore affect the validity of the sale. *See id.*

At oral argument, when asked why no direct appeal was taken from the bankruptcy court's Order of Sale, Defendant replied that the bankruptcy court lacked jurisdiction to enter the Order of Sale in the first place. Cast in a different mold, Defendant argued essentially that he had no obligation to appeal from a purportedly invalid and illegal order.[5] This argument, for its force, depends upon Defendant's repeated protestations that the legal malpractice suit did not constitute property of the bankruptcy estate. Several courts of appeals have considered similar arguments designed to evade the effect of § 363(m), and their decisions prove instructive here.

*Sax*, 796 F.2d at 995, concerned a maritime lien claimant's appeal from a bankruptcy court order approving the sale of a yacht as property of the debtor's estate. On appeal, the lien claimant argued that because the yacht was not property of the estate, the sale was not under § 363 and bankruptcy mootness did not apply. *Id.* at 996. The *Sax* court held the lien claimant's appeal moot because "the sale . . . was authorized under § 363(b) and [the lien claimant] failed to obtain a stay of the sale." *Id.* at 997. With respect to the claim that the yacht was not property of the estate and could thus not be sold pursuant to § 363(b), the *Sax* court aptly reasoned, "Section 363(m) does not say that the sale must be *proper* under § 363(b); it says the sale must be *authorized* under § 363(b)." *Id.* The bankruptcy court acted under § 363(b) when it authorized the sale and, thus, "it matters not whether the authorization was correct or incorrect." *Id.* at 997-98.

Perhaps most pertinent to our purposes, the court examined the lien claimant's alternative argument that the bankruptcy court lacked subject matter jurisdiction because the yacht did not constitute property of the estate:

> The appellants raise the jurisdictional argument as if it somehow negates or excuses their failure to obtain a stay. It does not. This appeal is moot because [the lien claimants] failed to obtain a stay, so we cannot reach the question of whether the bankruptcy court had jurisdiction to approve the sale. . . . *The bankruptcy court made the determination that it had jurisdiction; an issue which it had jurisdiction to decide. That decision stands unless it is appealed properly.* Despite the maxim that "subject matter jurisdiction can be raised at any time," valid procedural rules cannot be ignored just because the jurisdictional decision is being challenged rather than the

---

[5]This argument is nothing short of absurd. The very nature of an appeal is to challenge perceived errors in a lower court's rulings. To permit a party to circumvent proper procedures for review in this manner would undoubtedly wreak havoc on the legal process, not to mention cast asunder congressionally-enacted procedures for review.

decision on the merits.　To accept [this] argument would be to ignore valid procedural requirements.

*Id*. at 998 (internal quotation marks and citations omitted, emphasis added).　The court concluded by carefully noting that its holding merely required that proper procedures be followed to obtain appellate review of bankruptcy decisions – procedures which, in the context of that case, required the lien claimant to obtain a stay of the sale.　*Id*. at 999.

In *Ranallo*, 112 F.3d at 646, the Third Circuit considered a debtor's appeal from a bankruptcy court's order approving the § 363(b) sale of assets of the debtor's wholly owned subsidiary.　The debtor attempted to secure a stay, but the bankruptcy court denied his motion and the sale was consummated.　*Id*. at 646-47.　On appeal from the order, the debtor argued that the assets sold were not property of the bankruptcy estate and therefore that the bankruptcy court lacked jurisdiction over the sale and its order was void.　*Id*. at 647.　Pertinently, with respect to the jurisdictional argument, the court observed,

> section 363(m) does not distinguish between a challenge to an order approving a sale predicated on jurisdictional grounds and a challenge based on other grounds.　We recognize that it might be claimed that a bankruptcy court usurped power so that even absent a stay, notwithstanding section 363(m), an order reversing an order approving a sale permissibly could affect the validity of the sale assets.　*Such a case in theory could arise if the bankruptcy court approved the sale of assets not even colorably within its jurisdiction.　But we are not concerned with that possibility as the bankruptcy court, at least arguably, had jurisdiction* over [the subsidiary's] assets which [the debtor] indirectly owned through its ownership of [the subsidiary].

*Id*. at 650 (emphasis added).　Ultimately, the *Ranallo* court concluded that the debtor's appeal was moot inasmuch as finding in favor of the debtor would affect the sale's validity.　*Id*. at 649-50.

Other appellate panels have joined the *Sax* and *Ranallo* courts in concluding that § 363(m) moots appeal from an unstayed order of sale notwithstanding claims that the property sold did not constitute property of the estate and that the bankruptcy court thus lacked authority.　*See In re Vance*, 12 F. App'x 380, 382 (7th Cir. 2001) ("Whether or not the sale was proper is irrelevant."); *The Charter Co.*, 829 F.2d at 1055-56; *cf. also In re Rare Earth Minerals*, 445 F.3d 359, 364 (4th Cir. 2006) ("To recognize an exception to statutory mootness whenever a claimant asserts that her property was wrongly assumed into the estate 'would seriously undermine the purpose of § 363(m) and could destroy the rule altogether.'"); *but cf. Rutherford Hosp., Inc. v. RNH P'ship*, 168 F.3d 693, 699 (4th Cir. 1999) (noting that " bankruptcy court's jurisdiction does not extend to property that is not part of a debtor's estate," and finding property not in existence at the time of the sale in bankruptcy "could not have been conveyed . . . , mistakenly or otherwise").

Similarly, a previous panel of our Circuit found claims that the bankruptcy court lacked subject matter jurisdiction on other grounds irrelevant to the question of bankruptcy mootness in *Richards v. Swinebroad & Denton Auctioneers*, 770 F.2d 167, 1985 WL 13526 (6th Cir. 1985) (unpublished), an opinion with persuasive effect.　On a motion for reconsideration, the district court in *Richards* concluded that the debtors' appeal from the bankruptcy court's order authorizing sale was moot.　While before us on appeal, the debtors argued that the bankruptcy court lacked jurisdiction to enter the order because it had modified their voluntary Chapter 11 plan in doing so. *Id*. at *2.　We found it unnecessary to address the debtors' jurisdictional argument because they failed to obtain a stay.　*Id*.　We reasoned:

> The debtors' objections . . . if valid, at most demonstrate error by the court, and error does not render the court's order void for lack of jurisdiction.　If any error was committed by the bankruptcy court in the exercise of its authority over the debtors'

> petition . . . , the remedy lies with an appeal and a stay of the sale pending appeal. The clear intent of Congress in cases such as this is to protect the interest of bona fide purchasers.

*Id*. Therefore, we concluded the debtors' appeal was moot. The Fifth Circuit has similarly held on two separate occasions. *See The Ginther Trusts*, 238 F.3d at 689 (creditors challenging subject matter jurisdiction on ground that debtor lacked standing to become a debtor in bankruptcy); *Gilchrist*, 891 F.2d at 561 (claim that court "lost jurisdiction when [it] *sua sponte* dismissed the case on the ground that there was no attorney to represent the corporate debtor").

All this cataloguing of precedent is to say we are in good company when we reject Defendant's jurisdictional attack on statutory mootness. This is not a case where the bankruptcy court "usurped power," as by "approv[ing] the sale of assets not even colorably within its jurisdiction." *See Ranallo*, 112 F.3d at 650. The bankruptcy court below "at least arguably" had jurisdiction over the legal malpractice suit. The Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case," and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. §§ 541(a)(1), (7). As "legal and equitable interests," causes of action that belong to the debtor constitute property of the estate under § 541(a)(1). *In re Cannon*, 277 F.3d 838, 853 (6th Cir. 2002); *see also Bauer v. Commerce Union Bank, Clarksville, Tenn*., 859 F.2d 438, 441 (6th Cir. 1988). Additionally, rights derivative from the debtor's causes of action constitute an interest in property that the estate acquires. *See In re O'Dowd*, 233 F.3d 197, 202 (3d Cir. 2000) ("[W]ith limited exceptions . . . , the estate encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences.").

Colorably, then, the legal malpractice suit in the instant case was property of the estate under § 541. Although the parties each devote substantial portions of their briefs on appeal to the question whether the legal malpractice suit was properly classed "property of the estate," we decline to explore the matter further. To engage in a discussion of this question on the merits would be to defeat the very purpose of the bankruptcy mootness provision. *Cf. Weingarten Nostat, Inc. v. Serv. Merch. Co., Inc.*, 396 F.3d 737, 744 (6th Cir. 2005) ("To accept [Defendant's] argument would rob § 363(m) mootness of its force, since an appeal of a bankruptcy court order will typically question whether a given transaction is authorized by the bankruptcy code."); *Made in Detroit*, 414 F.3d at 581 (noting § 363 "limits appellate review of a consummated sale . . . *regardless of the merits* of the legal arguments raised against it"). Defendant's arguments on this point are quite clearly tailored to affect the validity of the Order of Sale, which the bankruptcy court authorized pursuant to § 363.

It is worth noting as well that, in concluding that the legal malpractice claim at issue here was property of the estate, the bankruptcy court passed on the issue of its own jurisdiction. *Cf. Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377 (1940) ("The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action."). Defendant allowed his opportunity to litigate the issue of jurisdiction to pass when he failed to appeal the Order of Sale, and failed to obtain a stay of the sale. Defendant's "failure to obtain a stay is fatal to his position, regardless of whether there was jurisdiction." *See Gilchrist*, 891 F.2d at 561. If the bankruptcy court erred "in the exercise of its authority over the debtor['s] petition . . . , the remedy lies with an appeal and a stay of the sale pending appeal." *Richards*, 1985 WL 13526, at * 2; *see also Sax*, 796 F.2d at 998 ("Despite the maxim that 'subject matter jurisdiction can be raised at any time,' valid procedural rules cannot be ignored just because the jurisdictional decision is being challenged rather than the decision on the merits."). Because no stay of the sale issued, we cannot now permit Defendant to impugn the validity of the Order of Sale.

However, we have previously acknowledged that "state law may provide exceptions to the bankruptcy mootness rule, unless federal interests mandate different results." *255 Park Plaza Assocs.*, 100 F.3d at 1218 (internal quotation marks and citation omitted). For example, where "state law would otherwise permit the transaction to be set aside," an exception to mootness may lie. *Id.*; *see also CGI Indus.*, 27 F.3d at 299 n.6. It is here that Defendant's public policy argument comes into play. Defendant relies on *Coffey by Collins v. Jefferson County Bd. of Educ.*, 756 S.W.2d 155 (Ky. Ct. App. 1988), but *Coffey* is inapposite.

There, a woman asserted claims of negligence against a director of grounds for the school district. *Id.* at 156. The school district hired an attorney to represent the director until two weeks before trial, at which time they cut off assistance to him. *Id.* At trial, the director confessed judgment in the amount of $1,000,000, and in satisfaction of that judgment, assigned "all claims he might have" against the school district's attorneys to the woman. *Id.* The *Coffey* court found the assignment "void as against public policy" because of its "collusive" nature. *Id.* at 157. The result followed from the fact that proof of negligent conduct is required to recover, the assignee may not be privy to the information necessary to show negligence, and damages were not readily ascertainable. *Id.* None of these considerations are present where a debtor's bankruptcy estate sells a legal malpractice suit to the defending attorney's malpractice insurer. The malpractice insurer, for reasons too obvious to state, does not desire to prove up the claim of malpractice, nor to collect monetary damages. Additionally, the malpractice insurer who purchases a legal malpractice suit against its insured enters into the transaction as a matter of business, and not in lieu of a judgment for its prior negligence. There is nothing "collusive" about a debtor's bankruptcy estate selling a cause of action to garner funds to repay the creditors. Thus, Defendant has not shown that Kentucky law or public policy requires the bankruptcy sale of the legal malpractice suit to be set aside.

At any rate, any exceptions must not be construed in such a way to undermine § 363's role in protecting the finality of a sale in bankruptcy. *See Rare Earth Minerals*, 445 F.3d at 364; *cf. also Sax*, 796 F.2d at 998 ("[T]o look for exceptions would increase litigation, which would seriously undermine the finality and certainty imposed by § 363(m)."). Section 363(m) reflects a strong preference for safeguarding the finality of a sale in bankruptcy. *Weingarten Nostat*, 396 F.3d at 741; *Ranallo*, 112 F.3d at 647-48; *Krebs Chrysler-Plymouth*, 141 F.3d at 500; *Stadium Mgmt. Corp.*, 895 F.2d at 847; *Sax*, 796 F.2d at 998. "Finality is important because it minimizes the chance that purchasers will be dragged into endless rounds of litigation to determine who has what rights in the property." *Sax*, 796 F.2d at 998. In the case at bar, finality considerations carry even greater force where the property at issue is a legal malpractice suit, purchased at auction by the lawyer's malpractice insurance carrier undoubtedly to foreclose the possibility of lengthy litigation. *Cf. CGI Indus.*, 27 F.3d at 300 (finding stay of the sale "intrusive to the extent that it prevents [the good faith purchaser] from proceeding with the malpractice action, leaving the company with an asset that it has paid for but cannot put to use as it sees fit").

Consequently, inasmuch as Defendant collaterally attacks the bankruptcy court's Order of Sale in these proceedings, Defendant must fail. We find Defendant's attempts to invalidate the Order of Sale moot.

### 2.          The Anti-Injunction Act *Does Not Bar the Injunction Here*

The Anti-Injunction Act prohibits federal courts from issuing injunctions to stay state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The bankruptcy court's injunction here constitutes a stay of Kentucky court proceedings within the meaning of the Anti-Injunction Act. *See Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 941 (6th Cir. 2002). However, the injunction does not fun afoul of the Anti-Injunction Act inasmuch as it falls within the "expressly authorized" exception to the Act.

Under the "expressly authorized" exception, there is no requirement that Congress specifically mention § 2283; rather, statutory language permitting federal court injunctions to issue against state court proceedings can create an "expressly authorized" exception. *See Mitchum v. Foster*, 407 U.S. 225, 237 (1972) ("[A] federal law need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception."). Where statutory language does not directly address the matter, we look for relevant legislative history before concluding that Congress expressly authorized the federal court to enjoin state court proceedings. *Vendo Co. v. Lektro Vend Corp.*, 433 U.S. 623, 633 (1977) ("[A]s *Mitchum* recognized, [express] language need not invariably be present . . . if there exists sufficient evidence in the legislative history underlying [the statute]."); *see also Casa Marie, Inc. v. Superior Court of P.R.*, 988 F.2d 252 (1st Cir. 1993) (looked to statutory language and legislative history to determine whether Congress expressly excepted claims at issue from Anti-Injunction Act). Both the statutory language and the legislative history support our conclusion in the instant case.

As originally enacted, the Anti-Injunction Act contained an express exception for injunctions "authorized by any law relating to proceedings in bankruptcy." R.S. § 720, recodified as 28 U.S.C. § 379 (1940), 36 Stat. 1162. Following the Supreme Court's decision in *Toucey v. New York Life Ins. Co.*, 314 U.S. 118 (1941), Congress revised the Anti-Injunction Act in an effort to restore the law to its pre-*Toucey* position. In its 1948 revision, Congress excised the express reference to proceedings in bankruptcy. *See* 28 U.S.C. § 2283. In so doing, however, Congress made clear in the Reviser's Notes that it intended the general exception for injunctions "expressly authorized by Act of Congress" to apply to bankruptcy proceedings as well. 28 U.S.C. § 2283, Reviser's Notes (1948) ("An exception as to Acts of Congress relating to bankruptcy was omitted and the general exception substituted to cover all exceptions.").

Since that time, courts have widely affirmed that the "expressly authorized" exception to the Anti-Injunction Act includes injunctions authorized under the bankruptcy laws. *See In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984) ("[Section 105] includes the authority to enjoin litigants from pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate."); *Matter of Davis*, 691 F.2d 176, 178 (3d Cir. 1982) (citing 11 U.S.C. § 105(a)) ("The Bankruptcy Code, however, is an 'expressly authorized' exception to the statute."); *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398 (9th Cir. 1970) ("In the exercise of its jurisdiction over the debtor's property, the court had power to issue injunctions and all other writs necessary to protect the estate from interference, and to ensure its orderly administration."); *Carolina Pipeline Co. v. York County Nat'l Gas Auth.*, 388 F.2d 297, 298 (4th Cir. 1967); *In re U.S.H. Corp. of N.Y.*, 280 B.R. 330, 338 (Bankr. S.D.N.Y. 2002) ("Section 105(a) is an 'expressly authorized' exception to the Anti-Injunction Act."); *In re Berg*, 172 B.R. 894, 897 (Bankr. E.D. Wis. 1994) (finding § 105(a), taken together with another provision of the Code, creates "a viable exception to the Anti-Injunction Act"); *In re Baptist Med. Ctr. of N.Y.*, 80 B.R. 637, 641 (Bankr. E.D.N.Y. 1987); *In re Brown*, 39 B.R. 820, 826 (Bankr. M.D. Tenn. 1984); *In re Coger*, 319 F. Supp. 859, 861 (W.D. Va. 1970); *see also* 2 Collier on Bankruptcy ¶¶ 105-02, 105-3 (15th ed. 1987) ("The basic purpose of [Section 105] is to enable the court to do whatever is necessary to aid its jurisdiction, i.e., anything arising or related to a bankruptcy case.").

Title 11 U.S.C. § 105 authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. Section 105 further provides that

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105. It essentially vests the bankruptcy court with the authority to enforce its judgments and decrees. The Senate Report to accompany the 1978 Amendments to the Bankruptcy Code clearly states that Section 105 "is also an authorization, as required under 28 U.S.C. § 2283, for a court of the United States to stay the action of a state court." S. Rep. No. 95-989, at 29 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5815. Those same amendments removed previous limitations on the power of a bankruptcy judge to issue injunctions. *Id.* Taken together with other provisions of the Bankruptcy Code, § 105 provides an "expressly authorized" exception to the Anti-Injunction Act. *See In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("[11 U.S.C. § 105(a)] supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

The bankruptcy court below issued the injunction in question to give effect to § 363 and to § 541. The court enjoined "Defendant . . . from continuing to prosecute the state court action captioned *Robert E. Parker, et al. v. Thomas Goodman*, Case No. 05-CI-00979." (J.A. at 204-05, 122-25) By its terms then, the injunction was specifically directed to enforcing the court's earlier Order of Sale.[6] That Order, made pursuant to § 363, conveyed the "debtor's interest" in the entirety of Civil Action No. 05-CI-00979 to Lawyers Mutual. Notwithstanding this conveyance, and the consummation of the sale when Lawyers Mutual paid the bankruptcy estate in full, Defendant persisted in prosecuting his state law claims against Plaintiff. Causes of action constitute "legal and equitable interests" properly part of a debtor's estate under § 541, and a final sale of such property to a good faith purchaser gains the protection of § 363. The injunction here properly issued inasmuch as it was both "necessary and appropriate to enforce" the bankruptcy court's § 363 Order of Sale, made final by Defendant's failure to obtain a stay. *See In re Wiltse Bros. Corp.*, 361 F.2d 295, 300 (6th Cir. 1966) (citing 1 Collier on Bankruptcy, ¶¶ 2.62, 2.63) ("The Bankruptcy Court has jurisdiction to enjoin proceedings in other courts commenced after the filing of the petition in bankruptcy which interfere with the proper administration of the Bankrupt's estate."); *Carolina Pipeline Co.*, 388 F.2d at 298 ("Conceivably the State court suit could mean removal of this property from the bankruptcy estate, and hence the issue of ownership was of primary concern to the administering court.").

Defendant essentially concedes this result when he says that "a bankruptcy court could issue an injunction to protect the validity of an order approving a valid sale under 11 U.S.C. § 363." (Def.'s Br. at 49) Although Defendant contends that the bankruptcy court lacked the power to issue the injunction here because it protects an allegedly *invalid* sale under § 363, this cannot be the case. Where the challenging party fails to obtain a stay of a sale authorized under § 363, the bankruptcy court must have a means of enjoining conduct in complete defiance of a consummated sale. If the bankruptcy court lacked this authority, the finality and order imposed on administration of a bankrupt's estate through the statutory mootness provision, and the Bankruptcy Code more generally, would be seriously undermined.

In sum, the instant injunction falls within the "expressly authorized" exception for federal court injunctions of state court proceedings, by virtue of §§ 105, 363, and 541 of the Bankruptcy

---

[6]The bankruptcy court's order approving sale stated as follows:

> . . . The Trustee's 11 U.S.C. [§] 363 public auction sale of debtor's interest in a legal malpractice claim against Hon. Thomas W. Goodman, Jr. styled Robert E. Parker and Robin Browning Brock, Trustee, Bankruptcy Estate of Robert E. Parker vs. Thomas W. Goodman, Jr., Civil Action No. 05-CI-00979, Pike Circuit Court . . . to Lawyers Mutual Insurance Company . . . for the sum of TEN THOUSAND DOLLARS ($10,000.00) is hereby approved.

(J.A. at 38)

Code.  We therefore hold that the bankruptcy court's injunction does not run afoul of the Anti-Injunction Act.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.