RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0286p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re:  NASHVILLE SENIOR LIVING, LLC;
ANDERSON SENIOR LIVING PROPERTY, LLC;
CHARLOTTE OAKDALE PROPERTY, LLC;
GREENSBORO OAKDALE PROPERTY, LLC;
MT. PLEASANT OAKDALE I PROPERTY, LLC;
MT. PLEASANT OAKDALE II PROPERTY, LLC,
et al.,

> No. 09-5817

                                   *Debtors*.

_____

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, fka The Official Committees of
Tenants in Common Investors,

                                   *Appellant,*


         *v.*


ANDERSON SENIOR LIVING PROPERTY, LLC;
CHARLOTTE OAKDALE PROPERTY, LLC;
GREENSBORO OAKDALE PROPERTY, LLC;
MT. PLEASANT OAKDALE I PROPERTY, LLC;
MT. PLEASANT OAKDALE II PROPERTY, LLC;
PINEHURST OAKDALE PROPERTY, LLC;
WINSTON-SALEM OAKDALE PROPERTY, LLC,
                                   *Appellees*.

On Appeal from the Bankruptcy Appellate
Panel of the Sixth Circuit.
No. 08-07254—George C. Paine II, Bankruptcy Judge.

Argued:  June 15, 2010

Decided and Filed:  September 3, 2010

Before:  CLAY, ROGERS, and COOK, Circuit Judges.

———————————————

**COUNSEL**

**ARGUED:** Lawrence R. Ahern, III, BURR & FORMAN LLP, Nashville, Tennessee, for Appellant. Andrew J. Sloniewsky, STEPTOE & JOHNSON, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Lawrence R. Ahern, III, David W. Houston, IV, BURR & FORMAN LLP, Nashville, Tennessee, for Appellant. Andrew J. Sloniewsky, Filiberto Agusti, STEPTOE & JOHNSON, LLP, Washington, D.C., Robert A. Guy, Jr., WALLER LANSDEN DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellees.

ROGERS, J., delivered the opinion of the court, in which COOK, J., joined. CLAY, J. (pp. 17-18), delivered a separate opinion concurring in the judgment.

———————————————

**OPINION**

———————————————

ROGERS, Circuit Judge. Under 11 U.S.C. § 363(m), an approved sale of chapter 11 bankruptcy estate property generally cannot be challenged on appeal if the sale has already been consummated in good faith without an intervening stay. This "statutory mootness" provision not only protects the buyer, but also increases the ability of the bankruptcy estate to get a good price. The issue in this case is whether the same statutory provision extends to approved sales of property in which both the bankruptcy estate and non-debtors have an undivided interest, such as a tenancy in common. Only a cramped reading of the statutory mootness provision would lead to the anomalous result that the provision does not extend to such sales. Instead, the Bankruptcy Appellate Panel correctly read the provision to apply to sales of property in which the bankruptcy estate has an undivided interest in common with other co-owners.

The appellant below, the Official Committee of Unsecured Creditors, represents the interests of approximately thirty tenants in common who co-owned seven properties with the debtors, who initiated the chapter 11 bankruptcy proceedings that underlie this appeal. The bankruptcy court authorized the debtors to sell not only their interests in the seven co-owned properties, pursuant to 11 U.S.C. § 363(b), but also the undivided interests of the tenants in common, pursuant to 11 U.S.C. § 363(h). The Committee

appealed the bankruptcy court's authorization of the sale and then moved the bankruptcy court for a stay pending appeal. After the bankruptcy court denied a stay, the Committee waited more than one week before seeking similar relief from the Bankruptcy Appellate Panel. Before the Bankruptcy Appellate Panel could decide whether to grant a stay, however, the sale of the properties had closed. The debtors then moved to dismiss the Committee's appeal as moot pursuant to 11 U.S.C. § 363(m), and the Bankruptcy Appellate Panel ultimately granted that motion. Because § 363(m), fairly read, applies to a sale authorized under both § 363(b) and (h), the Committee's appeal was properly dismissed as statutorily moot.

The following facts, as recounted by the Bankruptcy Appellate Panel (B.A.P.), are not disputed on appeal:

> Prior to filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, each of the Debtors owned a parcel of real property improved with a facility for the elderly. Four of those properties were located in North Carolina and three others were located in South Carolina (collectively the "Properties"). The Debtors acquired the Properties in conjunction with a December 2006 transaction pursuant to which tenancy in common interests in the Properties were sold to investors. A group of approximately thirty investors (the tenants in common, or "TIC") purchased tenant in common interests in the Properties pursuant to the December 2006 transaction reflected in the Tenants in Common Agreement (the "TIC Agreement"). Under the TIC Agreement, the TIC had various rights, including the right to partition the Properties and to require unanimous approval of any sale, transfer, or exchange of the Properties. The Debtors own approximately a 60% undivided interest in the Properties and the TIC own 40%.

> In conjunction with the TIC Agreement, the TIC signed a Debt Assumption and Indemnification Agreement pursuant to which the TIC obligated themselves to Merrill Lynch Capital, apparently the predecessor in interest to GE Business Financial Services, Inc. ("GE"), for a specified portion of the debt and agreed that their fee interest was subordinate to GE. The Debtors defaulted on their payment obligations to GE, and GE accelerated the loan. In July 2008, GE commenced foreclosure proceedings.

> On August 17, 2008, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. After filing their petitions for relief, the Debtors sought authority pursuant to 11 U.S.C.

§ 363 to sell the Properties to the highest and best bidder.  Following the marketing of the Properties by the Debtors' broker, Five Star Quality Care, Inc. ("Five Star") eventually emerged as the highest and best bidder.  The Debtors and Five Star entered into an agreement regarding the sale of the Properties.  On October 10, 2008, the Debtors filed a motion seeking approval of bidding procedures for the sale of the Properties, recognition of Five Star as the "stalking horse," and authority to sell the Properties pursuant to 11 U.S.C. § 363(b) to the highest and best bidder (the "Sale Motion").  The [Official] Committee [of Unsecured Creditors ("Committee"), which was formerly known as the Official Committees of Tenants in Common Investors, and which is comprised of the TIC,] opposed the Sale Motion.  The Debtors also filed adversary proceedings against the TIC in which [the] Debtors sought permission to sell the TIC's interest[s] in the Properties pursuant to [11 U.S.C.] § 363(h).  The Debtors filed motions for summary judgment in each of those proceedings, and the TIC opposed those motions.

On October 21, 2008, the bankruptcy court held a hearing at which it approved the proposed sale procedures over the objections of the Committee and set November 12, 2008[,] as the date for the hearing on the approval of the sale of the Properties to the highest and best bidder.

*Official Comms. of Unsecured Creditors v. Anderson Senior Living Prop., LLC (In re Nashville Senior Living, LLC)*, 407 B.R. 222, 225-26 (B.A.P. 6th Cir. 2009) (citations omitted) (footnote omitted).

After taking testimony and reviewing evidence at the November 12, 2008, hearing, the bankruptcy court "granted in all respects" the debtors' motion to sell the properties.  The bankruptcy court summarized the testimony, including that of one of the debtors' experts to the effect that "the sale of only the debtors' interest in the property would be difficulty [sic] at best" and would "most likely not . . . result in a higher return."  The bankruptcy court then found that the debtors had proved, as required by Sixth Circuit precedent, that a sound business purpose justified the sale of the debtors' property interests, other than in the ordinary course of business, under 11 U.S.C. § 363(b). The bankruptcy court noted that, if the sale were not approved, GE would likely foreclose upon the properties and that any further delay in approving the sale would harm the assisted living facilities' elderly residents.

When the Committee's counsel asked the bankruptcy court for its decision with respect to the proposed sale of the TIC's interests pursuant to 11 U.S.C. § 363(h), the bankruptcy court responded that it had "stated its opinion. I mean, if you wish to appeal it, you're welcome to appeal it." Later in the hearing, when addressing a distinct but related issue, a representative from the Office of the United States Trustee again mentioned the need for approval of the sale of the TIC's interests under 11 U.S.C. § 363(h). The bankruptcy court stated:

> Right. I—that was subsumed in the Court's decision, quite frankly, about whether it was going to be sold. I—I don't think you can partition this.
> I—I don't think you can—I mean, going through the—you know, § 363(h)—I think the expert met all of those criteria. I don't think we'd get much of a sale of any kind if we—if we sold it piecemeal, or half and half, or whatever.
> So—so the Court probably should have said, you know, they—the findings of the sale equally applied to [subsection (h)].

On November 20, 2008, the bankruptcy court issued an order approving the sale of the properties and the disbursement of the sale proceeds. In this order, the court found, in relevant part, that the transactions at issue had "been negotiated at arms-length, in good faith and are in the best interests of the Debtors' estates, their creditors, and the residents of the [assisted living] facilities." Moreover, the court found that Five Star was a good faith purchaser and was therefore "entitled to the protections of Bankruptcy Code section 363(m)." The court further found that, based on the "pleadings and filings" in the adversary proceedings,

> the [debtors] have demonstrated that (i) partition in kind of each Property among the applicable [debtor] and the TICs is impracticable; (ii) a sale of the [debtors'] undivided interests in the Properties would realize significantly less for the [debtors] and their estates than the sale of the Properties free of the interests of the TICs; (iii) the benefit to the [debtors] and the estates of the sale of the Properties free and clear of the interests of the TICs outweighs the detriment, if any, to the TICs; (iv) the [debtors'] Properties are not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power; and (v) overall, the [debtors] have satisfied the requirements of Bankruptcy Code section 363(h) and it is appropriate for

> the [debtors] and estates to sell their respective interests and any and all of the TIC['s] interests in the Properties.

Accordingly, the bankruptcy court authorized the debtors to sell the TIC's property interests to Five Star "free and clear of all Claims and Interests."

Later in the day on November 20, 2008, the Committee filed a notice of appeal from the bankruptcy court's authorization of the sale and an "Expedited Motion for Stay Pending Appeal." The Committee characterized its stay motion as "urgent because under the purchase and sale contract approved by the Court, closing may occur as soon as three days after entry of the orders authorizing the sale." The debtors opposed a stay, arguing that if the sale to Five Star were not "closed before the end of the year," the debtors would almost certainly "lose the sale." The debtors also asked that, if the court were to impose a stay, it require a bond of at least $15 million.

Not long thereafter, on November 24, 2008, the bankruptcy court entered a final judgment in favor of the debtors, i.e., authorizing the sale of the TIC's interests, in each of the seven adversary proceedings. On November 25, 2008, the Committee appealed each judgment.

Also on November 25, 2008, the bankruptcy court denied the Committee's expedited motion for a stay, finding that the TIC would face only financial harm, which is not irreparable, if the sale to Five Star were consummated. The court concluded that the Committee had also failed to show that the harm to the TIC absent a stay was greater than the harm to others if a stay were imposed. Nor had the Committee shown a likelihood of success on the merits of its appeal.

Eight days later, on December 3, 2008, the Committee sought a stay from the B.A.P., characterizing the situation as "a bona fide emergency" and asserting its likely success on appeal because "the Bankruptcy Court [had] completely disregarded the protections provided to the TIC Owners by [§ 363(h)]." The debtors filed their opposition later that same day and emphasized the detrimental effect of imposing a stay: the "facilities are deteriorating and losing occupancy, the Debtors are having difficulty

funding operating costs, and piecemeal foreclosures with relief from stay by GE . . . are the likely result of any delay."

Even later in the day on December 3, the sale to Five Star closed. In a telephonic hearing with the B.A.P. on December 4, the debtors' counsel represented that he had told the B.A.P. clerk at around 11:45 a.m. on December 3 that the debtors had been trying to close the sale for some time and that it could possibly close that same day or the next. Counsel had filed the debtors' opposition to the Committee's stay motion at approximately 1:30 p.m. on December 3. The sale had closed at 4:58 p.m. However, counsel had not notified the B.A.P. of the closing until approximately 11:00 p.m. One of the B.A.P. judges was of the opinion that "the panel and the opposing party should have been advised that the actions sought to be stayed were going to occur"; he was "deeply disturbed [by] and concerned about" the sequence of events.

Nonetheless, the B.A.P. denied the motion because the Committee had delayed in seeking a stay and the sale to Five Star had closed. The B.A.P. noted that the "Committee's counsel could not articulate a reason for having waited an entire week after the bankruptcy court [had] denied a stay to seek a stay in this Court." And, because the Committee had waited so long, the B.A.P. could no longer "take any effective action."

The day after the sale had closed, the debtors moved to dismiss the Committee's appeal as moot pursuant to 11 U.S.C. § 363(m). Section 363(m), the statutory mootness provision at issue on this appeal, provides that, absent a stay, a sale to a good faith purchaser under § 363(b) or (c), once consummated, cannot be reversed or modified on appeal. Sections 363(b) and (c) provide for a bankruptcy trustee's sale of "property of the estate" both "other than in the ordinary course of business" (§ 363(b)) and "in the ordinary course of business" (§ 363(c)). In response, the Committee argued that § 363(m), by its terms, does not apply to a sale of co-owned property under § 363(h), the provision that permits in some circumstances the sale of property in which both the debtor and non-debtor(s) own undivided interests as tenants in common, joint tenants, or tenants by the entirety.

After responding to the debtors' motion to dismiss, the Committee moved the B.A.P. to reconsider its denial of a stay. The Committee renewed its request for a stay, despite the closing of the sale, so that no further prejudicial action could be taken. In support of its motion for reconsideration, the Committee referred the B.A.P. to the Committee's response to the motion to dismiss. The Committee did not otherwise provide any support for its motion.

Several months later the B.A.P. proceeded to dismiss the Committee's appeal as moot under 11 U.S.C. § 363(m). *In re Nashville Senior Living*, 407 B.R. at 224. In assessing the interaction between § 363(h) and § 363(m), the B.A.P. characterized § 363(h) as a codification of "the common law right of a tenant in common to seek partition by sale under certain limited circumstances." *Id.* at 227. The B.A.P. then explained that, "[p]ursuant to § 363(m), an appeal is moot when the appellant has failed to obtain a stay from the order that authorized the sale at issue, . . . regardless of the merits of any legal arguments raised against it." *Id.* at 228 n.8.

The B.A.P. noted that the bankruptcy court had approved the sale of the properties under both § 363(b) and (h); in fact, the debtors could not have sold the TIC's interests without approval under § 363(h). *Id.* at 228. The B.A.P. then explained that, "although § 363(m) does not explicitly refer to a sale authorized under [§ 363](h), [§ 363(m)] nevertheless applies because the authority for such a sale is derived from [§ 363](b)." *Id.* at 231. The B.A.P. concluded that the transfer of the TIC's interests "was a central element of the" sale that could not "be challenged without challenging the validity of the sale." *Id.* at 228-29. Indeed, "the sales contract gave [Five Star] the unilateral right to terminate the agreement if an order approving a sale under § 363(h) w[ere] not entered." *Id.* at 229. Because the Committee had failed to obtain a stay, and because the sale to Five Star had closed, "§ 363(m) moot[ed] the Committee's appeal." *Id.* at 230.

The B.A.P. reasoned that, by "[a]pplying § 363(m) to a sale which was authorized under § 363(b) and further authorized under § 363(h)," it was "promot[ing] the strong preference for safeguarding the finality of bankruptcy sales." *Id.* (citing

*Weingarten Nostat, Inc. v. Serv. Merch. Co.*, 396 F.3d 737, 741 (6th Cir. 2005)).  Indeed, "[t]o provide for an exception to statutory mootness where a portion of the overall sale required authorization under § 363(h) would 'undermine § 363's role in protecting the finality of a sale in bankruptcy.'" *Id.* (quoting *Parker v. Goodman (In re Parker)*, 499 F.3d 616, 626 (6th Cir. 2007)).  The Committee now appeals.

The B.A.P. properly determined that 11 U.S.C. § 363(m) moots the Committee's appeal because, even though the bankruptcy court approved the sale of the TIC's property interests pursuant to 11 U.S.C. § 363(h), the debtors ultimately sold the properties pursuant to 11 U.S.C. § 363(b) and that sale was never stayed.  Section 363's subsection (m) makes certain appeals moot as a matter of statutory law:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Subsection (m) requires, then, that "when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets," and when the debtor has consummated that sale with a purchaser who acted in good faith, the appellant may proceed no further.  *255 Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. P'ship)*, 100 F.3d 1214, 1216 (6th Cir. 1996) (quoting *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1171 (9th Cir. 1988)).  In other words, "[t]his provision 'limits appellate review of a consummated sale . . . regardless of the merits of legal arguments raised against it.'" *Made In Detroit, Inc. v. Official Comm. of Unsecured Creditors of Made In Detroit, Inc. (In re Made In Detroit, Inc.)*, 414 F.3d 576, 581 (6th Cir. 2005) (alteration in original) (quoting *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 392 (2d Cir. 1997)).  This statutory mootness provision has strong public policy underpinnings: it "is predicated on the particular need to encourage participation in bankruptcy asset sales and increase the value of the property of the estate by protecting good faith purchasers from

modification by an appeals court of the bargain struck with the debtor." *Weingarten Nostat, Inc. v. Serv. Merch. Co.*, 396 F.3d 737, 741 (6th Cir. 2005).

Subsection (m) by its terms refers to authorizations for the sale or lease of property pursuant to subsection (b) or (c). *See* 11 U.S.C. § 363(m). Subsection (b) establishes that a "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[1] *Id.* § 363(b)(1). Subsection (c), on the other hand, addresses a trustee's authority to "enter into transactions, including the sale or lease of property of the estate," and to "use property of the estate," while acting "in the ordinary course of business, without notice or a hearing." *Id.* § 363(c)(1). Because the sale at issue here was other than in the ordinary course of business, subsection (c) has no direct bearing on the outcome of this case.

Neither subsection (b) nor subsection (c) explicitly refers to the sale of a co-owner's property interests. Under § 363(h), a trustee may get authorization for such a sale, if the sale is without the co-owner's consent, only by initiating an adversary proceeding and then satisfying certain requirements.[2] *See id.* § 363(h); Fed. R. Bankr. P. 7001(3). More specifically, a

> trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

---

[1] Even though 11 U.S.C. § 363 expressly refers to trustees, the terms of the statute apply equally to debtors in possession, such as the debtors in this case, who "generally ha[ve] the authority to exercise the same powers as a trustee." *Weingarten Nostat*, 396 F.3d at 742 n.4 (citing 11 U.S.C. §§ 1107(a), 1108).

[2] When a co-owner consents to the sale of co-owned property, the trustee need not satisfy the requirements of subsection (h) before selling that property, under subsection (b) or (c), "free and clear" of the co-owner's interest. *See* 11 U.S.C. § 363(f)(2).

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

Although a bankruptcy court must make specific findings under subsection (h) before authorizing the sale of a non-consenting co-owner's undivided interest in property, the trustee ultimately sells the property pursuant to either subsection (b) or (c), because a trustee sells all estate property pursuant to either one or the other of those two subsections.  To be sure, subsection (h) does impose additional requirements when a co-owner withholds consent to a sale.  *See id.*  But if the bankruptcy court finds that those requirements are met, then the trustee sells the co-owned property, "free of the interests of co-owners," under subsection (b) or (c).  *See id.* § 363(h)(3); *see also id.* § 363(h)(2).  Thus, subsection (h)'s safeguards, if satisfied, do not affect the ultimate source of the trustee's authority to sell the property—subsection (b) or (c).

The conclusion that a sale implicating subsection (h) is nonetheless a sale under subsection (b) or (c) finds support in the language of subsection (h) itself, which provides that a "trustee may sell *both* the estate's interest, *under subsection (b) or (c) of this section*, *and* the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest."  *Id.* § 363(h) (emphasis added).  Subsection (h) expressly invokes a trustee's authority to sell property under subsection (b) or (c).  Thus a sale that implicates subsection (h) is just one type of sale under subsection (b) or (c).

This conclusion also finds support in the language of § 363's other subsections.  "In reading a statute we must not 'look merely to a particular clause,' but consider 'in connection with it the whole statute.'"  *Dada v. Mukasey*, 554 U.S. 1, 26 (2008) (quoting *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974)); *see also Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809-10 (1989).  Whereas several of § 363's subsections refer

to a trustee's authority to "sell property under subsection (b) or (c)," 11 U.S.C. § 363(f), (g); *see id.* § 363(d), (*l*); *see also id.* § 363(k) ("[a]t a sale under subsection (b) of this section"), there is no mention of a trustee's authority to "sell property under subsection (h)." Rather, the only two subsections that expressly refer to subsection (h) do so while discussing "a sale of property to which subsection . . . (h) of this section applies." *Id.* § 363(i), (j). This language suggests that a trustee does not sell property "under" subsection (h), but that subsection (h) may apply to a sale made under some other subsection. The statute viewed as a whole, then, indicates that "a sale of property to which subsection . . . (h) . . . applies" is also a sale "under subsection (b) or (c)." An appeal from an order authorizing such a sale is accordingly subject to the mootness provision of the Bankruptcy Code.

Because the bankruptcy court below found that subsection (h) was satisfied and authorized the sale of the properties pursuant to subsection (b), and because the sale of the properties to Five Star—a purchaser whose good faith is not in dispute—had closed before the Committee could obtain a stay, the Committee cannot challenge the bankruptcy court's findings under subsection (h) on appeal.[3] If the Committee could pursue such a challenge, then the Committee could, in effect, contest the bankruptcy court's authorization of the sale under subsection (b). This court refused to allow as much in *Parker v. Goodman (In re Parker)*, where a debtor collaterally attacked the bankruptcy court's jurisdiction to authorize the then-final sale of an asset under subsection (b). 499 F.3d 616, 622-25 (6th Cir. 2007). In *In re Parker* we determined that the debtor had "allowed his opportunity to litigate the issue of jurisdiction to pass when he . . . [had] failed to obtain a stay of the sale." *Id.* at 625. "Because no stay of the sale [had] issued," we could not, at that point, "permit [the debtor] to impugn the validity

---

[3]Although a "majority of our sister circuits construe § 363(m) as creating a *per se* rule automatically mooting appeals for failure to obtain a stay of the sale at issue," the Third Circuit imposes one additional requirement: that the reviewing court be unable to "grant effective relief without impacting the validity of the sale." *Parker v. Goodman (In re Parker)*, 499 F.3d 616, 621 (6th Cir. 2007). This court has not yet committed to following one or the other of these two approaches. *See id.*; *see also Weingarten Nostat*, 396 F.3d at 741 n.3. Nor need we do so here, because the result is the same in either case. There is no question that the Committee failed to obtain a stay before the sale to Five Star had closed. And any relief granted to the Committee "would materially modify the asset[s] purchased by" Five Star and "would therefore affect the validity of the sale." *In re Parker*, 499 F.3d at 622.

of the Order of Sale." *Id.* Thus the debtor's jurisdiction-based collateral attack was statutorily moot. *Id.* at 626. Likewise, here, the Committee lost its opportunity to challenge the bankruptcy court's findings under subsection (h) when the Committee failed to obtain a stay. Because the sale to Five Star has closed, the Committee cannot now "impugn the validity" of the bankruptcy's court's authorization of the sale under subsection (b).

The policies underlying the Bankruptcy Code also support reading subsection (m) to moot the Committee's appeal. "In determining the meaning of [a] statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (quoting *Crandon v. United States*, 494 U.S. 152, 158 (1990)). Applying subsection (m) in this context promotes subsection (m)'s "salutary policy of affording finality to judgments approving sales in bankruptcy." *Weingarten Nostat*, 396 F.3d at 741 (quoting *Anheuser-Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847 (1st Cir. 1990)). "Finality is important because it minimizes the chance that purchasers will be dragged into endless rounds of litigation to determine who has what rights in the property." *In re Parker*, 499 F.3d at 626 (quoting *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986)). Moreover, finality "increase[s] the value of the property of the estate by protecting good faith purchasers from modification by an appeals court of the bargain struck with the debtor." *Weingarten Nostat*, 396 F.3d at 741; *see In re Made In Detroit*, 414 F.3d at 581 (explaining that "[s]ection 363(m) maximizes the purchase price of assets" (alteration in original) (quoting *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997))).

Applying subsection (m) to the type of sale at issue here also preserves the value of a debtor's ability to engage in these types of sales. If a co-owner could challenge the bankruptcy court's authorization of the sale of his or her property interest even after the sale had closed, then it is unlikely that any purchaser would agree to the sale of the co-owned property. There would be too great a risk that the validity of the sale would be affected on appeal; indeed, the purchaser might not know the extent of his or her

holdings until after the co-owner had completely exhausted the appeals process. *Cf. Weingarten Nostat*, 396 F.3d at 741-42 (stating, "[t]he primary goal of § 363(m) is to protect good faith purchasers"). And, even if the debtor could nonetheless persuade a third party to enter into a purchase agreement, the sale value of the co-owned property would undoubtedly suffer. *Cf. In re Made In Detroit*, 414 F.3d at 581.

The Committee maintains that subsection (m) does not moot its appeal because that subsection can formally be read to apply only to authorizations under subsection (b) or (c) but not under subsection (h). The Committee contends that the grammatical structure of subsection (h) shows that a sale that implicates subsection (h) is not just one type of sale under subsection (b) or (c). But the Committee's reading of the statute is not persuasive.

The Committee's textual argument relies primarily on the following phrase in subsection (h): "[a] trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest." 11 U.S.C. § 363(h). In the Committee's view, because the phrase "under subsection (b) or (c) of this section" is set off by commas, the natural reading of the statute requires that this phrase modifies only the language that comes before it, i.e., the trustee's authorization to sell "the estate's interest." By contrast, the language authorizing the trustee's sale of "the interest of any co-owner" comes later and is therefore unaffected by the modifier. In other words, and in the Committee's view, the trustee's authorization to sell "the interest of any co-owner" is *not* "under subsection (b) or (c)" but rather comes from subsection (h) itself, and only after the trustee shows that certain conditions are met.

As discussed above, however, one could plausibly read this same phrase as authorizing the sale of both the debtor's interest and the co-owner's interest—together—under subsection (b) or (c) once subsection (h)'s requirements are met. And, as discussed above, whereas several subsections refer to a trustee's authority to "sell property under subsection (b) or (c)," *id.* § 363(f), (g), and several others refer

to "a sale of property to which subsection . . . (h) . . . applies," *id.* § 363(i), (j), there is no mention in any subsection of "a sale *under* subsection (h)."

Most importantly, the Committee's interpretation arguably reads an anomaly into the statute. Under the Committee's interpretation, all unstayed sales of estate property can be relied upon by a good faith purchaser, even if the interest of a third party, such as a lienholder, is affected by the sale (as in subsections (f) and (g)), *except* when the sale involves property in which a tenant in common or a joint tenant holds an interest. It is hard to imagine that Congress intended this result.

The Committee also argues that "[t]here is a world of difference between the sale of estate assets and the sale of non-debtor property," and that, as a result, "[w]hat are in essence forced sales of non-debtor property under Section 363(h) should be, and are, entitled to enhanced procedural protections." Comm.'s Br. 18-19. Indeed, sales of co-owned property *are* governed by "enhanced procedures." For example, a trustee may not sell a non-consenting co-owner's property interest without first initiating an adversary proceeding, Fed. R. Bankr. P. 7001(3), and then demonstrating that certain specific conditions are met, 11 U.S.C. § 363(h). By contrast, a trustee achieves the authorization to sell the estate's interest "by motion," Fed. R. Bankr. P. 9014(a), and "after notice and a hearing," 11 U.S.C. § 363(b)(1). Section 363 also confers upon a non-consenting co-owner a right of first refusal of sorts: before a trustee consummates the sale of co-owned property, the "co-owner of such property . . . may purchase such property at the price at which such sale is to be consummated." *Id.* § 363(i). If the co-owner fails to do so, he or she is nonetheless entitled to a share of the sale proceeds corresponding with his or her interest in the property. *Id.* § 363(j). It is clear, then, that the law imposes more rigorous procedures when a trustee sells a non-consenting co-owner's property interests. But it does not follow from those other, more rigorous procedures that a co-owner is also entitled to pursue an appeal after an unstayed sale has closed.

In the instant case, the Committee failed to obtain a stay and the sale to Five Star closed. The Committee, therefore, could not pursue its appeal of the bankruptcy court's

findings under subsection (h) because that appeal would necessarily challenge the bankruptcy court's authorization of the sale under subsection (b). Thus the Committee's appeal was statutorily moot under subsection (m).

The other arguments raised by the Committee on this appeal either need not be reached in light of our holding, or are without merit. The judgment of the Bankruptcy Appellate Panel is affirmed.

_____

**CONCURRING IN THE JUDGMENT**
_____

CLAY, Circuit Judge, concurring in the judgment.  I agree with the majority opinion that the statutory mootness provision of 11 U.S.C. § 363(m) applies to this case, but I reach that result for a reason different from the majority.

The majority holds that the sale of the Official Committee of Unsecured Creditors' ("Committee") property occurred under § 363(b)  and that § 363(h) merely sets out the requirements for the sale of a co-owner's interest pursuant to § 363(b).  I believe, however, that the unambiguous language of the statute indicates that the sale of the Committee's property was pursuant to § 363(h).  Section 363(h) states: "the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest."  This language clearly differentiates a sale of a co-owner's property and a sale "under subsection (b) or (c)."  Additionally, § 363(b) specifically refers only to "property of the estate," making it contrary to the plain terms of the statute to find that non-debtor property could be sold pursuant to § 363(b).  For these reasons, I do not agree that the non-debtors' property interest was transferred under § 363(b).[1]

While I disagree with the majority's statutory interpretation, I agree with the result.  Ample case law in this and other circuits indicates that sales made pursuant to § 363(b) and other subsections are subject to the statutory mootness provision of § 363(m). Most pertinently, in *Weingarten Nostat, Inc. v. Service Merchandise Co.*, 396 F.3d 737 (6th Cir. 2005), the Court found that § 363(m) applied to a sale under both § 363(b) and § 365.  The Court then cited a bevy of case law holding "that § 363(m) applies to the sale and assignment of a lease pursuant to §§ 363 and 365."  *Id.* (collecting cases).  In *Weingarten*, the sale was complicated because the debtor did not

---

[1]Even the debtor appears to agree that the bankruptcy court "also approved – under 363(h) – the sale of co-owner interests."  (Appellee's Br. at 21).

directly sell the assignment of the lease.  The Court found, however, that the overall agreement represented "one transaction" that led to the sale "pursuant to §§ 363(b) and 365."  *Id*.  In this case, the debtors' property, along with the co-owners' interests, were sold in a single transaction.  That transaction was authorized by both § 363(b) and § 363(h).  Therefore, the sale was "authoriz[ed] under subsection (b) or (c) of this section."  11 U.S.C. § 363(m).

Despite my disagreement with the majority on this issue, I fully agree that policy considerations counsel in favor of applying § 363(m) to this case and also agree with the majority's contention that non-debtor property is protected by additional procedural safeguards, not by being excluded from the ambit of § 363(m).

For these reasons, I concur in the judgment.